UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Joanne C. Jewell, CPA,

    Plaintiff,

    v.

United States Department of Education,

    Defendant.

Civil Action No. 2:22–cv–53–kjd

**OPINION AND ORDER**
(Docs. 36, 37)

    Plaintiff Joanne C. Jewell brings this action against Defendant U.S. Department of Education (DOE) to compel compliance with the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Pursuant to nearly 30 requests, Plaintiff seeks documents from the DOE and its Office for Civil Rights, in furtherance of her work as "a child advocate providing guidance to parents of children with disabilities." (Doc. 13 at 2, ¶ 4.)

    The DOE represented at the July 7, 2022 scheduling conference that thus far it had produced approximately 1,600 pages in response to Plaintiff's outstanding requests. At the conclusion of the hearing, the parties agreed that the DOE would produce at least 650 responsive pages per month, provide a monthly status report on the progress of each request, and complete five prioritized requests by September 15, 2022. The Court directed the parties to confer and file a proposed scheduling order for the production of documents responsive to Plaintiff's FOIA requests.

    Attempts to reach agreement on a proposed joint scheduling order have apparently been unsuccessful. The parties have each submitted proposed scheduling orders for the Court's review. (Docs. 35-3, 37-1.)

The Court GRANTS in part and DENIES in part the DOE's Motion to enter its proposed scheduling order (Doc. 37) and DENIES Plaintiff's Motion for the Court to Order an Expedited Response from the Defendant and/or Accept Plaintiff's Proposed Production Schedule as moot (Doc. 36).  In this Opinion and Order, the Court addresses certain issues raised in the parties' respective submissions and enters the concurrently filed Scheduling Order.

## Discussion

**I.      Format of Monthly Reports[1]**

    **A.      Reported Pages Produced**

Plaintiff contends that the DOE's monthly status reports should include a page count for those requests in which the search for responsive documents is ongoing.  (Doc. 35 at 3, ¶ 3; Doc. 35-3 at 3, ¶ 7.)  The DOE responds that, "[u]ntil the [DOE] completes its responsiveness review with respect to a given request, it is not possible for the Department to disclose a page count for responsive records, and the Department should not be required to disclose a page count for records that are *potentially* responsive to a given request."  (Doc. 37 at 6.)

Plaintiff appears to be requesting a page count for responsive documents in each in-progress request that the DOE has already provided, not a page count of responsive documents that potentially exist.  To that end, the DOE has addressed Plaintiff's concern in its most recent status report by reporting a page count for documents released "on an interim basis as part of a rolling production made with respect to a FOIA request that is still pending further processing." (*See* Doc. 40 at 1.)  Consistent with the most recent status report, the Court modifies the proposed scheduling order to explicitly require status reports to include updates on pages provided for "in-progress" reports.

---

[1] Plaintiff requests that the Scheduling Order require each status report to be made to both Plaintiff and the Court.  (Doc. 38 at 1, ¶ 2.)  Because the CM/ECF system will provide copies of the reports to Plaintiff by email, the Court does not modify the Scheduling Order to address this concern.

B.      **Production Timeline**

Plaintiff notes that because the DOE has provided no timeline for when her requests will be fulfilled, she "has no basis for determining how many months or years it will take to deliver the outstanding FOIA requests." (Doc. 35-3 at 3, ¶ 6.) She therefore proposes that the parties form a "new delivery schedule" when the DOE has "calculated" all responsive records. (*Id.*)

In all but two of the cases the DOE cites to support its proposed monthly page production, the agency appears to have provided an estimated timeline for completion of the production. *Johnson v. U.S. Dep't of Educ.*, No. 22-CV-831, Doc. 8 at 1–2, ¶ 2 (D.D.C. Jun. 6, 2022) (identifying approximately 900 pages of potentially responsive records and expecting to complete processing and production of non-exempt portion of responsive records by August 22, 2022); *Chaverra v. USCIS*, Civil Action No. 18-289 (JEB), 2020 WL 7419670, at *1 (D.D.C. Nov. 5, 2020) (identifying approximately 3,500 pages of potentially responsive documents and expecting to complete processing by February 2021); *Daily Caller News Found. v. FBI*, 387 F. Supp. 3d 112, 115 (D.D.C. 2019) (identifying approximately 7,000 pages of potentially responsive records after reduced scope and applying for stay to complete process until December 2020); *Middle East Forum v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 187 (D.D.C. 2018) ("At Defendant's proposed rate of 500 pages per month, the current universe of prioritized material will be processed in approximately seven months . . . ."). The two cases in which the agencies do not appear to have provided a timeline, the agencies provided a page-count estimate. *Colbert v. FBI*, 1:16-cv-01790-DLF, ECF No. 12 at 2, ¶ 4 (D.D.C. Dec. 1, 2016) (reporting identification of "over 37,000 pages of potentially responsive records," "anticipat[ing] that number to increase as it completes its search," and proposing "monthly releases of non-exempt information from the 500 pages processed monthly"); *ACLU v. U.S. Dep't of Homeland Sec.*,

No. 20 Civ. 10083 (PGG), 2021 WL 5449733, at *1 (S.D.N.Y. Nov. 19, 2021) (identifying approximately 9,000 potentially responsive records).

Although Plaintiff's requests appear to be broad in scope and numerous, at present the Court has no basis to gauge how close the DOE's production is to completion. The most recent status report includes a page count of responsive documents not yet released for five of the seventeen in-process requests, but the DOE has not provided any identified responsive pages for eleven of those requests. To ensure "the fullest possible agency disclosure of such information consistent with a responsible balancing of competing concerns," *see Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of State*, 300 F. Supp. 3d 540, 546 (S.D.N.Y. 2018) (quoting *Halpern v. FBI*, 181 F.3d 279, 284 (2d Cir. 1999)), the Scheduling Order requires the next status report to provide an approximate date by which the agency reasonably anticipates completing Plaintiff's requests.

## II.     Objections to Substance of Production Responses

### A.     Page Count

Plaintiff asserts that the parties agreed at the scheduling conference to a 650-record minimum monthly production. (Doc. 35 at 4, ¶¶ 7, 8; Doc. 35-3 at 3, ¶ 6.) The DOE responds that it had "previously proposed that responsive records be produced to Plaintiff at a pace of at least 650 *pages* per month" (Doc. 37 at 4), a standard that courts have consistently deemed reasonable in setting monthly production requirements. *See, e.g.*, *Daily Caller News Found.*, 387 F. Supp. 3d at 121 (collecting cases); *see also ACLU*, 2021 WL 5449733, at *1 ("Courts have issued orders providing for the processing of 500 pages per month, even where that schedule will result in lengthy production periods."). The page-number metric permits a court to measure an agency's diligence in providing requested records. Given that the page length of individual agency records may vary considerably, it is inherently difficult for a court to determine a

reasonable monthly production on a "record" basis. Therefore, the Scheduling Order includes the requirement that the DOE release responsive records to Plaintiff at a pace of at least 650 pages per month.

The DOE's monthly status report shall include a line item providing the total pages produced over the previous month. As the number of pages released in July 2022 is unclear in the DOE's first status report, the DOE shall also file an addendum to its July 2022 status report denoting how many pages were released to Plaintiff during that reporting period.

### B.      DOE's Clawback of Records

At the scheduling conference, Plaintiff discussed the DOE's production of certain responsive documents and its subsequent "clawing back" and re-production of the documents in redacted form. (Doc. 35 at 2, ¶ 1; Doc. 35-3 at 2, ¶ 4.) Plaintiff asserts that these 662 pages were "[her] evidence that was never requested," including complaints that she herself submitted to the agency. (Doc. 35 at 2, ¶ 1; Doc. 35-3 at 2, ¶ 4.) She therefore requests the production of 1,300 pages "to offset the time the agency spent rectifying their own mistake." (Doc. 35 at 3, ¶ 5; Doc. 35-3 at 4, ¶ 13.)

Although the Court appreciates Plaintiff's concern that some of the documents produced thus far apparently consist of documents that she already possesses, this "clawing back" and redaction effort does not affect whether the agency "can or should process documents at a rate faster than [650] per month." *See Middle East Forum*, 297 F. Supp. 3d at 186. Accordingly, the Scheduling Order maintains the 650-page monthly minimum production amount.

### C.      Timing of Responses to Certain Requests

Plaintiff proposes that the DOE prioritize ten requests for production by September 15, 2022. (Doc. 35 at 4, ¶ 6.; Doc. 35-3 at 4, ¶ 14.) The DOE's proposed scheduling order calls for production of documents in four of the requests by September 15, 2022 (Doc. 37-1 at 1), noting

5

that one of the other six has already been completed and that it is "hopeful" that it will complete two more of the requests by that date as well (Doc. 37 at 3 n.1).  The DOE asserts that the proposed prioritization would ultimately result in a less timely production.  Explaining that it "must perform administrative searches using a limited e-Discovery resource for which there is a backlog" (*id.* at 3), the agency contends that the requested prioritization would "restrict the Department's flexibility" and therefore would "slow the overall pace of production."  (*Id.*)  Therefore, the agency seeks to continue "reviewing, processing, and releasing responsive records as they become available."  (*Id.*)

FOIA requires the executive, "upon any request for records," to determine "within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor . . . ."  5 U.S.C. § 552(a)(6)(A)(i)(I).  "Courts have, however, recognized the difficulties in processing all FOIA requests within 20 days, and have permitted the executive to process requests on a first-in, first-out basis."  *ACLU v. Dep't of Def.*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004) (citing *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)).  This "first-in, first-out basis, coupled with a multitrack processing system [can] be consistent with due diligence," so long as the requester does not have a compelling need for any of the requested documents.  *Bloomberg L.P. v. FDA*, 500 F. Supp. 2d 371, 376 (S.D.N.Y. 2007).  A requester establishes a "compelling need" for certain documents when (i) "a failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual"; or (ii) "with respect to a request made by a person primarily engaged in disseminating information, urgency [exists] to inform the public concerning actual or alleged Federal Government activity."
5 U.S.C. § 552(a)(6)(E)(v).

The agency has agreed to provide nearly half of the requests in the order of priority that Plaintiff proposed, and it represents that it responded to another of the requests before it submitted its proposed schedule. For the remaining requests, the information presently before the Court does not establish a "compelling need" under the statute to warrant an expedited response to the identified requests.[2]

### D. Proposed Modifications to Certain FOIA Requests

Plaintiff's proposed production schedule appears to request modifications to the scope of several of her FOIA requests. For one request, Plaintiff asserts that an agency employee "confirmed there were responsive records." (Doc. 35-3 at 1, ¶ 1.) She therefore "does not want her evidence returned in any FOIA response" to this request, and any response instead "should include the records (cases) [the employee] confirmed" in a September 2021 email to Plaintiff. (*Id.*) Plaintiff also states that she provided "parameters for the scope of . . . four FOIA requests" to the agency in mid-July. (*Id.* at 4, ¶ 12.)

To the extent that Plaintiff seeks to modify the scope of any request for documents from the DOE, it is appropriate for Plaintiff and the DOE to address the matter in the first instance. As the Scheduling Order is intended to govern the timing and procedure of the production of documents, the Court does not address substantive modifications to the FOIA requests in the Scheduling Order.

## III. Request for *Vaughn* Indices

Plaintiff proposes that the DOE produce a *Vaughn* index for each of her document requests. (Doc. 35 at 3, ¶ 4; Doc. 35-3 at 3, ¶ 8.) The DOE objects that the production of these

---

[2] Plaintiff has also asked that two FOIA requests be released "immediately" and "without delay" and that they "not be counted toward the monthly minimum production schedule." (Doc. 35 at 4, ¶¶ 7, 8.) The DOE included these two requests in the four that it will complete by September 15, 2022. (Doc. 37-1 at 1.) Its most recent status report also notes that it has already released the records responsive to one of those requests. (Doc. 40 at 3.)

indices is both "labor intensive" (Doc. 37 at 6; Doc. 39 at 3) and premature, as it is "not yet clear whether the resolution of this case will require the Department to prepare Vaughn Indices" or "what sort of Vaughn Indices may be appropriate" (Doc. 39 at 3).  In response to Plaintiff's assertion that *Vaughn* indices are autogenerated and would therefore not be labor intensive (Doc. 38 at 2, ¶ 3), the DOE explains that agency personnel manually draft the indices to "describe with reasonable specificity the nature of any material that is not disclosed and the justification for not disclosing such material," and this would "require the Department to reallocate significant resources" to complete indices for Plaintiff's requests (Doc. 39 at 2, 3).

When a government agency withholds production of documents on the grounds that it is exempt from disclosure under FOIA, a *Vaughn* index lists "each item withheld, the exemptions claimed for that item, and the reasons why the exemption applies to that item."  *Lykins v. U.S. Dep't of Just.*, 725 F.2d 1455, 1463 (D.C. Cir. 1984) (citing *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973)).  The index serves three functions:

> (1) it forces the government to analyze carefully any material withheld, (2) it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, (3) and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Halpern*, 181 F.3d at 287 (quoting *Keys v. U.S. Dep't of Just.*, 830 F.2d 337, 349 (D.C. Cir. 1987)).  A *Vaughn* index "is not required where it is not needed to restore the traditional adversary process"—in other words, where "a FOIA requester has sufficient information to present a full legal argument." *Fiduccia v. U.S. Dep't of Just.*, 185 F.3d 1035, 1042 (9th Cir. 1999) (quoting *Wiener v. FBI*, 943 F.2d 972, 977 n.5 (9th Cir. 1991); *Minier v. CIA*, 88 F.3d 796, 804 (9th Cir. 1996)).  Affidavits from the agency can provide this information, so long as "the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are

8

not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Courts generally do not require the agency to produce *Vaughn* indices until completion of the document production. *See Edmond v. U.S. Att'y*, 959 F. Supp. 1, 5 (D.D.C. 1997) ("Plaintiff's request for a *Vaughn* Index is premature since the government has not yet processed Plaintiff's FOIA request and has not determined the extent of disclosure."). Therefore, typically "[t]he requirement for detailed declarations and Vaughn indices is imposed in connection with a motion for summary judgment filed by a defendant in a civil action pending in court." *Schwarz v. U.S. Dep't of Treasury*, 131 F. Supp. 2d 142, 147 (D.D.C. 2000), *aff'd*, No. 00-5453, 2001 WL 674636 (D.C. Cir. May 10, 2001); *Ioane v. Comm'r*, No. 3:09-CV-00243-RCJ(RAM), 2010 WL 2600689, at *6 (D. Nev. Mar. 11, 2010) ("Generally, agencies should be given the opportunity to file dispositive motions and produce affidavits regarding claimed exemptions before they are ordered to produce *Vaughn* indices.").

Accordingly, the Court declines to order the DOE to produce a *Vaughn* index in conjunction with its ongoing responses to each document request. Given the detail required for each index, producing individualized indices with the agency's rolling production of responsive documents would likely affect the efficiency of the agency's responses to Plaintiff's other pending requests.[3]

---

[3] The DOE represents that the records the agency releases to requesters automatically contain "redaction codes . . . that have been manually applied to each page of a production." (Doc. 39 at 2 n.1.) It further states that "[t]he response letters that the Department includes with its productions likewise list and describe the statutory bases upon which any material has been withheld." (*Id.*) Should this matter result in further litigation over withheld documents, the production of *Vaughn* indices at a later stage may aid Plaintiff in determining whether she will contest the withheld documents. *See N.Y. Times Co. v. U.S. Dep't of Just.*, 762 F.3d 233, 237 (2d Cir. 2014) ("The purpose of a *Vaughn* index is to afford a FOIA plaintiff an opportunity to decide which of the listed documents it wants and to determine whether it believes it has a basis to defeat the Government's claim of a FOIA exemption." (citing *Keys*, 830 F.2d at 349)).

**Conclusion**

For the reasons discussed above, the Court GRANTS in part and DENIES in part the DOE's Motion to enter its proposed scheduling order. (Doc. 37.) The Court hereby approves and enters the Scheduling Order filed concurrently with this Opinion and Order.

On July 19, 2022, Plaintiff filed a Motion for the Court to Order an Expedited Response from the Defendant and/or Accept Plaintiff's Proposed Production Schedule. (Doc. 36.) The docket reflects that the DOE filed a motion seeking entry of its proposed production schedule on July 20, 2022. (Doc. 37.) As this Order sets a Scheduling Order, the Court DENIES Document 36 as moot.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 16th day of August 2022.

> /s/ Kevin J. Doyle
> Kevin J. Doyle
> United States Magistrate Judge